By the Court.-Speir, J.
The appellants claim, in the first place, that the delivery of the goods was by the contract and the evidence unconditional, and that even though the vendors had a right to demand the gold-note at the time of the delivery of the goods, they were bound to declare their intention, and insist upon that right. That in this case the delivery was absolute, and, by the sellers’ silence, raised a legal presumption that the condition was waived, and hence the presumption became a conclusion of law. The elementary doc *150 trine regarding sales, is, that where no time is agreed on for payment it is understood to be a cash sale, and the payment and delivery are immediate and concurrent acts, and the vendor may refuse to deliver without payment, and if payment be not immediately made, the contract becomes void. There is no doubt that, upon a contract to sell goods, where no credit is stipulated for, the-ven dor has a lien ; so that if the goods be actually delivered to the vendee, and upon demand then made he refuses to pay, the property -is not changed, and the vendee may lawfully take the goods as his own, because the delivery was conditional. In the contract before us, there is no stipulation for credit; the delivery of the goods and the gold-note are clearly concurrent acts, and the plaintiffs retained their lien until payment by the gold-note was made upon demand for it, for the delivery will be taken to be conditional unless the condition was waived by the plaintiffs. But the appellants claim that an absolute delivery, unexplained, raises a legal presumption that the condition was waived. It is not necessary that the qualification or condition intended to be annexed to the delivery should, at the time, be declared by the vendors in express terms. The question must be determined by the intent of the parties, and the delivery will be conditional if't can be so inferred by their acts and the circumstances of the case (Fuiniss v. Hone, 8 Wend. 256; Smith v. Devine, 6 Pick. 266, Parker, Ch. J.). The evidence in this case, relating to the conduct of the parties in carrying out the contract of sale, furnishes a legal presumption that the conditional delivery was not waived. It appears that on October 1, 1872, the plaintiffs sent to the defendants a bill containing an order for five casks of cream of tartar contracted for, ■ informing them the balance awaited defendants’ order in Beaver-street. The bill contained the terms—gold-note at ninety days to their own order—and gave the *151 weight in pounds, at thirty-three and one-half cents, gold, and the amount for the gold-note. On or before 3rd of same October, the defendants acknowledged the receipt of the fifteen casks, and informed the plaintiffs that every cask was two pounds short, gross weight, and asked them to “call and see.” The plaintiffs then immediately sent a second bill, to which, on the 9th 'of same October, the defendants reply, by note, that both bills rendered are wrong; that the weighmaster had made mistakes. The plaintiffs then sent a third bill, which the defendants admitted was correct. It is in evidence that each bill contained the same terms stated to be in the first, “gold-note at ninety days to your own order,” and the price per pound, and the amount for which the note was to be given. The plaintiffs continued to make demand for the note until the last demand was made and refused, when the action was brought. The first cause of complaint—the weight—was removed on October 9. The next cause—the quality—appears on the 14th ; five days after' the first was adjusted. Chemical tests were applied to only four casks. Cask No. 212 was tested on October 12, 1872, and given to defendants on that day. Casks No. 90, 91, 92, were tested on October 16 or 17, and given to the defendants on the 17th—the same day Ihe suit was commenced. It is plain that the amount for which this gold-note was to be given could not be ascertained until the weights were adjusted, and the delivery was for the convenience of ascertaining the amount of the note. Chitty on Contr. (8th Am. ed. 344, note), lays down the rule that where payment and delivery are expected to be simultaneous, and payment is omitted, evaded, or refused by the vendee, after delivery, the vendor may immediately reclaim the goods (Chapman v. Lathrop, 6 Cow. 113). In Massachusetts, it is held that replevin lies for goods unlawfully detained, although there may not have been a tortious taking. The actual delivery of the goods does not, of *152 itself, transfer the ownership in them ; to perfect the title of the vendee, there must be a consummation of the contract of salé (Marston v. Baldwin, 17 Mass. 605). And it was further held that, in case of a conditional sale of goods, when the condition is not performed by the vendee, the vendor may establish his property in the goods without showing the contract rescinded, and without returning a partial payment made by the vendee. In Herring v. Hoppock, (15 N. Y. 409), it was held that where property was delivered to a vendee, in a conditional sale, and the condition was not performed, the vendee had no interest in the property which could be the subject of a levy and sale on execution. In view of the law and evidence in the case, I think the learned judge very properly left the question of intent, whether the delivery was conditional, and also the question of waiver, to the jury. The defendants claim that the sale was by sample", and that the warranty was that the bulk of the goods should correspond in purity with the sample. The evidence does not disclose with any certainty the precise result arrived at by the experiments made-by the chemical witnesses. From an attentive examination of the testimony, I infer that the quality of the cream of tartar was. based upon the cask 212 only, and that the test was made as late as October 14, 1872, and communicated to the plaintiffs when they commenced action. The samples by which the sale was made were tested in January, 1874, shortly before the trial. It is not clear that any test or examination as to whether or not the contents of the casks were equal in any respects as to quality to the samples, until the time of trial; however the facts may be, the questions raised were disposed of by the judge in his charge to the jury. He told them that when a sale is made by sa-mple, it is a warranty that the bulk of the article should be equal to the sample, and if the plain *153 tiffs expressly warranted that the quality of the cream of tartar sold be equal to the sample by which the sale was made, the sale-note of the broker is in effect a warranty that the quality of the goods should conform to the sample, and that it was for the jury to pass upon it whether the evidence discloses that the bulk of the goods was not as pure as the sample in reference to which they were sold. The charge presented the questions raised to the jury most favorably to the defendants. There are many cogent reasons why the plaintiffs, after, by their contract of sale, making the receipt of the gold-note concurrent with the delivery of the goods intended to, and did make the delivery conditional, and that when the defendants failed to respond to the several demands made for the gold-note, and the delay was likely to lead to a waiver of the condition, they should have repossessed themselves of their property, thereby avoiding a legal controversy which would be terminated after great delay and much expense, while the vendees would have the beneficial use of the goods which had not been paid for. This intention, in my judgment, was made manifest by their prompt action in ascertaining the weight of the cream of tartar, in restating in each bill rendered the same terms for “gold-note at ninety days,” and their several demands for the note. The defendants had two of these casks powdered and nsed in their business when the 'suit was commenced, and although it is in evidence that the testing of the quality took a very short time, and could instantly be done, nearly two weeks passed before the plaintiffs had notice that the article was impure and not like the samples. I do not discover any error in the rulings of the court upon the motions to dismiss the complaint, or in the exceptions taken. The court refused to charge the jury as requested, for the reason that he had embraced in his charge all the subjects contained in the requests, *154 and substantially all the questions raised by the evidence.
Judgment affirmed, with costs.
Freedman and Van Vorst, JJ., concurred.