Putnam, J.,
delivered the opinion of the Court. Several objections have been made to the plaintiff’s recovery.
It is said that there has not been any tortious taking by the de fendant, and that replevin lies only where there has been such a taking. And it is a general remark in the books that, where there has been a tortious taking, replevin will lie, as well as detinue and trespass.
Where the taking was originally without wrong, but the party detains the goods wrongfully, the owner should have some remedy for them specifically, if to be found. The defendant contends that *326 detinue, in such case, is the only remedy. This is certainly not so effectual a remedy, if indeed it be not entirely obsolete, (a) The judgment in detinue is, to recover the thing, or the value of it if it cannot be found, with damages for the taking. (9) In replevin, the thing is immediately seized; but in detinue, the possession is not changed, until after judgment; and this being conditional, the value, as estimated by the jury, may be but a poor compensation for the thing detained. After a judgment in detinue, a distringas goes to the defendant, ad deliberanda bona; and if he will not deliver them, the plaintiff shall have the value, as ascertained by the jury. So that it is at the defendant’s election to deliver the goods or the value. (10)
Replevin is, then, the only certain remedy to recover the specific goods; and it may be maintained where the taking was lawful, but the detention unlawful. Thus, where one takes cattle damage feasant; if the owner will tender amends before the cattle are impounded, he may, at common law, maintain replevin for the unlawful detention, although the taking was lawful. (11) And in such case, the plaintiff shall recover damages for the detention, and there shall be no return. It was truly said by Lord Redesdale (12) that *327 this action, being founded on any unlawful taking, is * “ calculated to supply the place of detinue and trover.” And the remark seems to apply as well to an unlawful detention, as to an unlawful taking.
But, however limited this action was at the common law, the statute of 1789, c. 25, lias greatly extended the remedy, (a) By the fourth section of this statute, when any goods or chattels shall be taken, distrained, or attached, the owner may have his replevin. And the late Chief Justice Parsons observes, after remarking upon this statute, that, “ as a general principle, the owner of a chattel may take it in replevin from any person whose possession is unlawful, unless it is in the custody of the law, or unless it has been taken by replevin from him, by the party in possession.” (13)
We are therefore satisfied that this action will lie, if the defendant wrongfully detains the goods from the plaintiff. This leads us to the further objections made on the part of the defendant.
*328 It has been said that the contracts between the plaintiff and the infant were voidable by the latter, and binding upon the plaintiff: that the defendant, as administrator of the infant, has a right to avoid them ; and that the plaintiff, deriving his title originally from .the infant, on a contract which the defendant now chooses to rescind, must fail in proving a property in the goods, either general or special.
As to the sale of the goods in March, 1817, to the plaintiff, it is sufficient to say that the contract vras executed by Rand,. He delivered the goods, and received the money for them ; and we should have required him to restore the money before recovering the goods. We must recollect that the privilege of infancy is a shield, and not a sword. There is no evidence that Rand ever expressed the least dissatisfaction with that contract. Now, that sale of the goods was valid until rescinded. (14)
We proceed to consider the second contract, made in the fall of 1817; when the plaintiff, induced by the misrepresen tation of Rand that he was of age, conveyed the goods * to him. The defendant contends that he has rescinded that contract, as administrator of Rand. What then ? should not the plaintiff and defendant be placed in the same situation as if no such contract had been made? But that will not do for the defendant. His notion of rescinding is to keep all, and to pay nothing on the contract. He has defended successfully against the plaintiff’s suit for the price of the goods, on the ground that his intestate was an infant; and he now contends that he may' hold the goods also, without making any payment for them, for the same reason.
This result does not follow, (a) The goods were delivered by the plaintiff to Rand, because he undertook to pay for them, and declared that he was of age. The basis of this contract has failed, from the fault, if not the fraud, of the infant; and on that ground, the property may be considered as never having passed from, or as having revested in, the plaintiff. It is said in Pothier, 1, 13, if, with the intention of giving or lending a thing to Peter, I give or lend it to Paul, whom I mistake for Peter, the gift or loan is void for want of my consent. The plaintiff supposed that he was dealing with a man of full age, and not with an infant; and the fraud which induced the contract furnishes the ground for the impeachment of it. Thus, in the case oí Buffington & Al. vs. Gerrish & Al., (15) where *329 one purchased goods on credit, by means of false representations, and afterwards the creditors of the vendee attached them, — it was very well held that the vendor had not parted with his property, but might maintain replevin against the attaching officer.
It has been further objected, that the writ was delivered to the officer before a demand was made for the goods. It is a sufficient answer that, if the defendant had delivered the goods upon the demand, there would have been no necessity to serve the writ. It may be considered as purchased at any moment of the day of its date which will most accord with the truth and justice of the case. And it * is evident, that it was not to be considered as of any validity until after the demand and refusal to deliver the goods was had.

Judgment for the plaintiff.

 Modern cases, where this action has been brought, are very numerous, and rather tend to show that replevin in those cases could not be maintained. — Garth vs. Howard & Fleming, 5 Car. & Paine, 346. — 1 Moore & Scott, 698. — Phillips vs. Robinson, 4 Bingh. 106.— Gledstane vs. Hewitt, 1 Cr. & J. 565.— 1 Tyrw. 445. — Kettle vs. Bromsall, Willes, 118. — Mills vs. Graham, 4 B. & P. 140.—Atkinson vs. Baker, 4 D. & E. 229. — Hall vs. White, 3 Car. & P. 135. — Stevenson vs. Addeson, 5 L. J. K. B. 265. — Pawley vs. Holley, 2 Bl. 853. — Darden vs. Alien, 1 Devr. 466. — Robinson's Admr. vs. Brock, 1 H. & M. 213. — Murell vs. Johnson's Admr. 1 H. & M. 450. — Merritt vs. Warmouth, 1 Hayw. 12. — Newby's Admr. vs. Blakey, 3 H. & M. 57.— Spiers vs. Alexander, 1 Hawks, 66. — Royall vs. Eppes's Admr. 2 Munf. 479. — Shepherd vs. Edwards, 2 Hay. 186. — Wethers vs. Wethers’s Exr. 6 Munf 10. — Shipper vs. Hargrave, Martin, 74. — Bass vs. Bass, 4 H. & M. 478. — Butler vs. Parks, 1 Wash. 76. — Armstrong vs. Simonton, 2 Murph. 351. — Bates vs. Gordon, 3 Call 555. — Buckner vs. Haggin, Munroe, 59. — Biggar's Admrs. vs Aderson, 1 H. & M. 54.— Garland vs. Bugg. 1 H. & M. 374. — Merritt vs. Merritt, Martin, 18.— Cornwall vs. Truss, 2 Munf. 195.— Thomas and Wife vs. Tanner, 6 Munroe, 52.— Boatright vs. Meggs, 4 Munf. 145. — Austin's Exr. vs. Jones, Gilm. 341. — Boggs vs. Newton, 2 Bibb. 221. — Holleday vs. Littlepage, 2 Munf. 539. — Denny vs. Booker, 2 Bibb. 427. — Higginbotham vs. Rucker, 2 Call. 313.— Grimes vs. Grimes, 2 Bibb. 594 —Bunley vs. Lambert, 1 Wash. 308. — Trimble vs. Stipe, 5 Munroe, 264. — Walthal vs. Johnson, 2 Call. 275. — Hugh vs. Clayton, 3 Call. 554. — Belch vs. Holloman, 2 Hayw. 328. — Stratton vs. Minnis, 2 Munf. 329. — Walker's Admrs. vs. Hawkins, 1 Hay. 398.— Smith vs. Towne, 4 Munf. 191.— Carrell vs. Early, 4 Bibb. 270.— Fowler vs. Lee, 4 Munf. 473. — Burton vs. Brashear, 3 Marsh, 278. — Fitzhughs, Adm. vs. Beale, 4 Munf. 186. — Tunstall vs. M'Clelland, 1 Bibb. 186. — Boggess vs. Boggess, 6 Munf. 486. — Johnson vs. Pasteur, Cam. & Nor. 464. — M 'Dewell vs. Hall, 2 Bibb. 610. — Foster vs. Smoot, 1 Marsh, 394. — And see Marbury vs. Maddison, 1 Crunch, 173. — Our own statute (1786, c. 52, § 1) recognizes the action.

 3 Black. Com.. 152.

 Kel. 64, b. Co. Ent. Detinue.

 Fitz. N. B. 69, G.

 1 Scholes & Lefroy, Shannon vs. Shannon.

 It is quite clear that the statute embraces only two cases. First, “ When any person shall have his cattle restrained or impounded, in order to obtain satisfaction for damages they may have committed, or to obtain a forfeiture supposed to have been incurred by their going at large out of the enclosure of the owner, in violation of Law, in order to have the legality of such distraint or impounding determined, he may have and prosecute a writ of replevin in the f brm prescribedwherein it is alleged that they have been 61 unlawfully taken” and are u unlawfully distrained or impounded.” Seo ondly, 11 When any goods or chattels shall be taken, distrained, or attached, which shall he claimed by a third person, and the person thus claiming the saíne shall think proper to replevy them, he may take out and prosecute his writ of replevin in the form prescribed”— wherein also it is alleged that the goods were “ unlawfully and without any justifiable cause taken and detained.” — Stat. 1789, c. 26. — As to all other cases, tiiey are left to the common law. The above case does not come within the provisions of the statute ; and at the common law no action of replevin would lie in such a case. — Galloway vs. Bird, 4 Bingh. 299. — Meary vs. Head, 1 Mason, 319. — Reg. Brev. 81, 139. —5 .Ed 2, 157.-33 H. 6, 12. —12 Ed. 4, 5. —13 Ed. 4, 9, 21. —8 H. 7, 14. — 3 H. 7, 12.—21 Ed. 4, 11, 76 — Townsead's Tables, Ab. p. 3. — 6 Instr, Cler. 517. — Rast. Ent. 569. — Ham. N. P. 334. — Stamf. Pl. Cor. 25. — Hale, P. C. 504.— Com. Dig. Plead. 3 K. 12. — Repl. A.—Bul. N. P. 52. — 3 Woodes. Lect. 219. — Gubbings vs. Creed, 2 Sch. & Lef. 222,223. —Nightingale vs. Adams, 1 Show 91.— Gilb. Rep. 140, 143, 148. — Ex parte Chamberlain, 1 Sch. & Lef 320. — Shannon vs. Shannon, 1 Sch. & Lef. 324. — Matter of Wilson's Bankruptcy. 1 Sch. & Lef. 320, in note.— Gilb. by Impey, 80, 82. — Dow vs. Wilkinson & Al 2 Stark. 288. — Farwell vs. Berresford, 1 Ball & Beat. 328. — Morg. Vad. Mec. 70—72. — Wilkinson, Repl. 2, 82. — Pangburn vs. Partridge, 7 Johns. 140. — Hopkins vs. Hopkins, 10 Johns. 373. — Button vs. Thomson, 14 Johns. 87.— Gardner vs Campbell, 15 Johns. 402. — Mills vs. Martin, 19 Johns. 31.— Clark vs. Skinner, 20 Johns. 467. — Marshall vs. Davis, 1 Wend. 109. — Vaiden vs. Bell, 3 Rand. 448. — Byrd vs. O'Hamlin, 1 Rep. Const. Court, 401.— Cummings vs. M'Gill, 2 Taylor, 98. — 2 Selw. N. P. 1184, 8th Lond. ed., and note to the American edition, title Replevin.— Sed vide Baker vs. Fales, 16 Mass. Rep. 147. — Marston vs. Baldwin, 17 Mass. Rep. 606. — Commonwealth vs. James, 1 Pick. 375. — Seaver vs. Dingle, 4 Greenl. 315.— Weaver vs. Lawrence, 1 Dallas, 157. — Shearick vs. Huber, 2 Bin. 2. — Stoughton vs. Rappala, 3 Serg. & Rawle, 562. — Kcite vs. Boyd, 16 Serg. & Rawle, 300. — Cullam vs. Bevans, 6 Har. & Johns. 469. — The object of the statute seems to have been to provide for cases where the goods might be in custodió Jegis, and by the common law not jepleviable. — Cramwell vs. Owings, 7 Har. & Johns. 55.

 5 Mass. Rep. 284, Ilsley & Al. vs. Stubbs.

 1 Mod. Rep. f25.

 Roof vs. Stafford, 7 Cowen, 179. — Holmes vs. Blogg, 8 Taint. 508. — M’Coy vs. Huffman, 8 Cowen, 84. — Kriton vs. Elliott, 2 Buls. 59. — Earl of Buckingham shire vs. Drury, 2 Eden. 72.

 Ante, 156.